## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

MILLS CASHWAY PHARMACY, INC.,    )
a Louisiana corporation, individually and    )
as the representative of a class of    )
similarly-situated persons,    )
                                    )   No.
              Plaintiff,    )
                                      )   **COMPLAINT-CLASS ACTION**
             v.    )
                                      )   **JURY TRIAL DEMANDED**
HUMANA INC., HUMANA    )
PHARMACY SOLUTIONS, INC. and    )
JOHN DOES 1-5.    )
                          )
             Defendants.    )

## CLASS ACTION COMPLAINT

Plaintiff, Mills Cashway Pharmacy, Inc. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which are based on personal knowledge, alleges the following upon information and belief against defendants Humana Inc. ("Humana Inc.") and Humana Pharmacy Solutions, Inc. ("HPS") (collectively, "Humana" or "Defendants"), after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1.    The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

2.    On July 1, 2020, Plaintiff received an unsolicited advertisement on its

fax machine. A true and correct copy of the 2-page facsimile message is attached as **Exhibit A**.

3.    **Exhibit A** advertises the commercial availability or quality of property, goods, or services available from Humana and HPS.

4.    **Exhibit A** advertises Humana's launch of "a new enhanced Pharmacist Portal" at which pharmacists can price and receive various commercially-available goods and services.

5.    Defendants did not have Plaintiff's prior express invitation or permission to send advertising material to Plaintiff's fax machine, or to advertise the launch of their new Pharmacist Portal through Plaintiff's fax machine.

6.    The TCPA provides a private right of action and statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). If the Court finds that Defendants willfully or knowingly violated the Act, it may increase the award to $1,500 per violation. The Court may also grant injunctive relief.

7.    **Exhibit A** has no opt-out notice, so the existence of "established business relationships" between Defendants and their intended fax recipients would not justify or support sending unsolicited advertising material to them by fax transmission. 47 U.S.C. § 227(b)(1)(C)(i) and (iii).

8.    Every unsolicited fax advertisement causes concrete harm. The sender uses the recipient's fax machine to deliver the sender's unsolicited advertisement.

Fax recipients are a captive audience. Fax machines are left on and ready to receive authorized messages. A fax can be received only with special equipment connected to a 10-digit fax number. Maintaining a functioning fax number and fax machine costs money. If automatically printed upon receipt of the transmission, as in the case of Plaintiff, an unsolicited fax automatically uses the recipient's paper and ink toner. Whether printed or not, however, every unsolicited fax imposes incremental, per-page costs on its recipients. Every unsolicited fax interrupts the recipient's privacy and seclusion, and wastes their valuable time, because somebody must view the sender's message to discern its source, purpose, or nature. Every fax transmission traverses the regulated, public telephone lines. An unsolicited fax causes undue wear and tear on the receiving fax machine. During its transmission, an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax.

9.      On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for each violation of the TCPA occurring within the four years before this action was commenced and continuing until the Court directs notice to the certified class.

## PARTIES, JURISDICTION, AND VENUE

10.      Plaintiff, Mills Cashway Pharmacy, Inc., is a Louisiana corporation operating a pharmacy in Parks, Louisiana.

11.     Defendant Humana Inc. is a Delaware corporation with its principal place of business located at 500 W Main St, Louisville, KY 40202. Its registered agent in Louisiana is C T Corporation System, 3867 Plaza Tower Dr, Baton Rouge, LA 70816.

12.     Defendant Humana Pharmacy Solutions, Inc. is a Kentucky corporation, organized on or about May 10, 2011, with its principal place of business located at 500 W Main St, Louisville, KY 40202. Its registered agent in Louisiana is C T Corporation System, 3867 Plaza Tower Dr, Baton Rouge, LA 70816.

13.     Defendants John Does 1-5 are persons unknown to Plaintiff who authorized or participated in the sending **Exhibit A** and other unsolicited fax advertisements, or on whose behalf such unlawful faxes were sent.

14.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

15.     Personal jurisdiction exists over Defendants in Louisiana because each transacts business in the State, is registered to do business here, and has committed tortious acts in the State by sending unlawful fax advertisements to Louisiana residents like Plaintiff.

16.     Venue is proper in the Western District of Louisiana because Plaintiff received the unlawful fax within this District and Defendants transact business and have committed statutory torts within this District.

## FACTS

17.    Plaintiff operates a pharmacy at 1027 Martin Street, Parks, Louisiana.

18.    On July 1, 2020, Plaintiff received a 2-page fax transmission on its telephone facsimile machine that was connected to Plaintiff's telephone fax number, (337) 845-5070. The facsimile message automatically printed on paper. A true and correct copy of the 2-page fax Plaintiff received is attached as **Exhibit A**.

19.    **Exhibit A**'s header indicates the message was sent by "Humana Inc." *See* 47 U.S.C. 227(d)(1)(B) (identification requirements).

20.    **Exhibit A**'s first page indicates "Humana" was the "sender" of the fax.

21.    The second page states, "Humana is excited to announce…." **Exhibit A**.

22.    "'Humana' is the brand name for plans, products and services provided by one or more of the subsidiaries and affiliate companies of Humana Inc. ('Humana Entities'). Plans, products, and services are solely and only provided by one or more Humana Entities specified on the plan, product, or service contract, not Humana Inc. Not all plans, products, and services are available in each state." https://www.humana.com.

23.    The advertising material on the second page of **Exhibit A** closes, "Humana Pharmacy Solutions," an apparent reference to HPS.

24.    In July 2020, HPS was Humana's "pharmacy benefit manager" ("PBM") and managed prescription drug benefits on behalf of Humana and others.

25.    **Exhibit A** advertises the commercial availability or quality of property, goods, or services.

26.    **Exhibit A**'s primary advertising material is reproduced below:



# Enhanced secure Pharmacist Portal launching in August

Humana is excited to announce a new enhanced Pharmacist Portal will be launching in August 2020. Some of the key features of the portal include:

- New look
- Easier navigation
- Advanced maximum allowable cost (MAC) pricing search capabilities
- Ability to send email inquiries directly from the portal to Humana
- New news alerts and notifications
- Helpful links and contact information

**How do I get access?**
If your pharmacy currently has an account for the existing Humana secure Pharmacist Portal, you will not need to re-register. Simply sign in to your account at **Humana.com/logon**.

If your pharmacy does not currently have access, please register for an account at **Humana.com/logon**.

For additional questions, please email HPSnetworks@humana.com.

We're here to help with this transition!

Humana Pharmacy Solutions

**Exhibit A**, p. 2.

27.    **Exhibit A** advertises Humana's "Pharmacist Portal" and the commercial availability or quality of goods and services on it for pharmacies that register for an account at Humana.com/login.

28.    When **Exhibit A** was sent, the Pharmacist Portal was a service offered by Humana and part of its commercial business.

29.    **Exhibit A** advertises that Humana's pricing for new transactions can be found on the Pharmacist Portal.

30.    **Exhibit A** highlights several new features of Humana's Pharmacist Portal.

31.    **Exhibit A** advertises the commercial quality of Humana's property, goods, or services by touting some of the "key features of the portal," like "New look; Easier navigation; Advanced maximum allowable cost (MAC) pricing search capabilities; Ability to send email inquiries directly from the portal to Humana; New news alerts and notifications; Helpful links and contact information."

32.    **Exhibit A** encourages the use of Humana's Pharmacist Portal and encourages registering for it or logging into it.

33.    **Exhibit A** has a call-to-action, encouraging the recipient to take action to register for and use the Pharmacist Portal.

34.    **Exhibit A** promotes the quality of Humana's customer service by stating, "We're here to help with this transition!"

35.    **Exhibit A** displays the Humana trademark and corporate logo prominently at the top of the cover page as well as in the upper left-hand corner of the advertisement, and directs recipients to visit their website, Humana.com/logon, and to email Humana at HPSnetworks@humana.com.

36.    Humana Inc. trademarked the Humana corporate logo on the fax on May 5, 2015, and it was given the US Registration Number 86402055 by the U.S. Patent and Trademark Office.

37.    The cover page states the "Sender" was "Humana" and the "Sender fax" is "1-866-305-6655."

38.    **Exhibit A** and the Pharmacy Portal are not goodwill gestures by Humana, but active parts of Humana's business.

39.    Humana is a collection of different for-profit health and wellness businesses.

40.    Humana advertises pharmacies and other healthcare providers to the various networks it services; to their members, prospective members, and purchaser/funders of those networks.

41.    In its 2023 10-K, Humana explained, "During December 2022, we realigned our businesses into two distinct segments: Insurance and CenterWell. The Insurance segment includes the businesses that were previously included in the Retail and Group and Specialty segments, as well as the Pharmacy Benefit Manager,

or PBM, business which was previously included in the Healthcare Services segment. The CenterWell segment (formerly Healthcare Services) represents our payor-agnostic healthcare services offerings, including pharmacy solutions, primary care, and home solutions. In addition to the new segment classifications being utilized to assess performance and allocate resources, we believe this simpler structure will create greater collaboration across the Insurance and CenterWell businesses and will accelerate work that is underway to centralize and integrate operations within the organization." 2023 10-K at p. 4.

42.    "Our pharmacy solutions business includes the operations of CenterWell Pharmacy (our mail-order pharmacy business), CenterWell Specialty Pharmacy, and other retail pharmacies located within CenterWell Primary Care clinics for brand, generic, specialty drugs, over the counter medications and supplies, as well as hospice pharmacy drugs." 2023 10-K at p. 11.

43.    "Our in-house dispensing pharmacy business competes with locally owned drugstores, retail drugstore chains, supermarkets, discount retailers, membership clubs, internet companies and other mail-order and long-term care pharmacies." 2023 10-K at p. 34.

44.    "Humana has transitioned its dentist portals to Availity Essentials. At Humana, we are always working to make sure you and your staff can get the important information you need quickly. That's why Humana and Availity have

teamed up to make it easier for you to work with us online. We are streamlining the healthcare processes for a better experience for administrators and providers." https://provider.humana.com/dentist-resources/dental-provider-portal-availity (6/28/2024).

45.     Availity Essentials is the product of Availity, a privately-held company based in Jacksonville, FL and generating 9-figure annual revenue through its maintenance of a free online portal to connect to payers, submit EDI transactions, revenue cycle management, and patient access management.

46.     Defendants' unsolicited fax advertising wasted valuable resources and imposed costs on Plaintiff and the other fax recipients.

47.     Like other pharmacies and healthcare providers, Plaintiff used its fax machine to send or receive speedy, private communications, not to send or receive unsolicited advertisements.

48.     In contrast to paper junk mail that arrives in a USPS mailbox, a junk fax can be received only at the recipient's ten-digit fax number and only using special equipment—a telephone facsimile machine—paid for by the recipient.

49.     Fax transmissions are sent between ten-digit numbers assigned by the North American Numbering Plan Administrator ("NANPA")—from one number in the integrated North American Numbering Plan ("NANP") to another NANP number—using the Public Switch Telephone Network ("PSTN") and the ITU T.30

faxing protocol as regulated by the FCC.[1]

50.    Each successful fax transmission crosses the public, regulated telephone network and the regular telephone lines.

51.    Somebody must review and scrutinize a document received by fax to discern whether it is an authorized, important, priority communication regarding a patient or their treatment.

52.    Each unsolicited fax advertisement invades the recipient's privacy and wastes the recipient's valuable time.

53.    During the time the sending fax equipment is communicating with the receiving machine, the receiving machine might be prevented from sending or receiving an authorized fax.

54.    Often, a junk fax automatically prints to paper, as it did when Plaintiff received **Exhibit A**, thus wasting the recipient's paper and ink toner.

55.    Each unsolicited facsimile transmission causes concrete damage to its recipient, particularly by wasting the valuable time of the recipient in reviewing the unsolicited advertising material.

56.    The TCPA permits a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for

---

[1]    NANP numbers are ten-digit numbers consisting of a three-digit Numbering Plan Area code, commonly called an area code, followed by a seven-digit local number.

each such violation, whichever is greater." 47 U.S.C. 227 (b)(3)(B).

57.    For itself and each class member, Plaintiff seeks statutory, liquidated damages of $500 for each of the unsolicited fax advertisements Defendants sent during the statutory period in violation of the TCPA or the FCC's regulations.

## CLASS REPRESENTATION ALLEGATIONS

58.    The proposed class is defined as follows:

> All persons and entities sent one or more facsimile transmissions (faxes) from Humana on or after June 28, 2020, announcing or promoting a new or improved provider portal, and not containing any opt-out notice.

Excluded from the class are Humana Inc., HPS, and each of their respective employees, officers, directors, shareholders, and legal representatives. Also excluded is any judge assigned to this action, and the members of his or her immediate family.

59.    **Exhibit A** is a "form letter"-type solicitation.

60.    The cover page shows the advertisement was sent in bulk to a computerized list of targets in which the targeted provider's name is capitalized ("MILLS CASHWAY PHARMACY") and the targeted fax number is a string of 11 digits ("13378455070").

61.    **Exhibit A** was not addressed to any individual at Plaintiff's business, nor was it sent from any identified individual at Defendants' businesses.

62.    Plaintiff intends to discover and include within this case all similar unsolicited advertisements Defendants sent by fax.

63.    Plaintiff anticipates modifying the proposed class definition— including proposing subclasses if appropriate—after discovery about Defendants' fax advertising practices.

64.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Finally, common questions of law or fact predominate over any individual questions and class representation is the superior method to adjudicate this controversy under, as required by Rule 23(b)(3).

65.    **Numerosity/Impracticality of Joinder:** On information and belief, the class includes more than 40 persons and is so numerous that individual joinder of its members is impracticable.

66.    **Exhibit A** is a standardized form advertisement, displaying Defendant's graphics and trademarks, and obviously sent to a list of targets.

67.    Plaintiff does not know the number of class members or their identities but intends to discover them in Antech's records or the records of third parties.

68. **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether Humana faxed material advertising the commercial availability or quality of property, goods, or services;

b. Whether **Exhibit A**—and other, similar documents sent by facsimile transmission announcing provider portals—contained "material advertising the commercial availability or quality of property, goods, or services";

c. The manner and method used to compile or obtain the target list(s) of intended recipients of the fax advertisements at issue;

d. Whether Defendants obtained "prior express invitation or permission" to send advertising material by facsimile transmission to their intended recipients;

e. Whether Defendants included an opt-out notice on their fax advertisements;

f.      Whether the Court should award statutory damages to Plaintiff and the other class members;

g.      Whether Defendants violated the TCPA or the FCC's regulations knowingly or willfully and, if so, whether the Court should treble the statutory damages; and

h.      Whether the Court should enjoin Defendants from faxing advertising material in the future.

69.     **Typicality of Claims**: Plaintiff's claims are typical of the claims of the other class members because they were injured by the same wrongful practices. Plaintiff and the other members of the class received unsolicited advertisements by facsimile transmission. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

70.     **Adequacy of Representation:** Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

71.     **Prosecution of Separate Claims Would Yield Inconsistent Results**: Common questions of fact and law predominate. Separate adjudication of class

member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants if or when class members bring additional lawsuits concerning the same or similar unsolicited fax advertisements or if Defendants advertise by fax again in the future.

72.    **A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions**: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation would be economically unfeasible and procedurally impracticable. There is no other TCPA lawsuit pending against Defendants. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff perceives no difficulty in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

73.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

74.    Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

75.    The TCPA provides in pertinent part as follows: 47 U.S.C. § 227 (b)(1)(C).

(b)  Restrictions on use of automated telephone equipment

    (1)  Prohibitions

        It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

* * *

        (C)  to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

        (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

        (ii) the sender obtained the number of the telephone facsimile machine through--

        (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

        (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

47 U.S.C. § 227 (b)(1)(C).

76.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

77.     **Exhibit A** is an unsolicited advertisement that Defendants sent by facsimile transmission without Plaintiff's prior express invitation or permission.

78.     The TCPA provides a private right of action as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount

equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

79.    **Exhibit A** contains no opt-out notice.

80.    The TCPA permits an advertiser to fax an otherwise "unsolicited advertisement" to a person with whom the sender has an "established business relationship," but the first page of the advertisement must contain a specific, clear, and conspicuous opt-out notice, or else it violates the TCPA. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

81.    The FCC's regulations of opt-out notices on facsimile advertisements are set forth in 47 C.F.R. § 64.1200(a)(4)(iii).

82.    **Exhibit A** advertises the commercial availability or quality of Humana's property, goods, or services.

83.    **Exhibit A** advertises Humana's Pharmacist Portal.

84.    **Exhibit A** had a clear commercial nexus to Humana's business, as it promoted the enhanced Pharmacist Portal, which is directly related to Humana's healthcare and insurance services.

85.    The Pharmacist Portal advertised in **Exhibit A** was directly related to Humana's healthcare business.

86.    **Exhibit A** indirectly promoted Humana's services by encouraging use of the Pharmacist Portal.

87.    **Exhibit A** encourage and promotes use of the Pharmacist Portal, so pharmacists and pharmacies will engage in direct commercial transactions with Humana or one of its many businesses, rather than transacting with or through some unrelated third-party, increasing Humana's revenues and profitability.

88.    Additionally, by convincing pharmacies to register for and use the Pharmacist Portal, Humana gains opportunities for future marketing and business relationships.

89.    Humana did not have Plaintiff's prior express invitation or permission to send advertising material by fax.

90.    The lack of an opt-out notice on **Exhibit A** necessarily means any "established business relationship" between Defendants and Plaintiff—or between Defendants and any of their other intended fax recipients—is irrelevant in this case. Cite!!!.

91.    Defendants violated 47 U.S.C. § 227, *et seq*., by faxing advertisements to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendants contend they sent advertisements by facsimile because of an "established business relationship," by failing to include an opt-out notice on the advertisements.

92.    Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required

opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to avoid the burdens imposed by this form of advertisement.

93.    The TCPA is a strict liability statute, and Defendants are liable to Plaintiff and the other class members even if its actions were negligent.

94.    Defendants are liable because they sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on their behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, and ratification.

95.    Defendants knew or should have known that Plaintiff and the other class members had not expressly invited or given express permission to receive Humana's advertising material by fax.

96.    Humana's actions caused harm. Humana's junk faxes invaded each recipient's privacy and right to seclusion and caused Plaintiff and others to lose paper and toner consumed in printing Humana's faxes. Moreover, the faxes used Plaintiff's and the class's fax machines, blocked or interfered with the sending and receiving

capacity of the machines, increased costs associated with operating and maintaining the fax machines, and otherwise wasted valuable resources.

97.     Plaintiff does not seek to recover for "actual" monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of $500 in statutory, liquidated damages for each violation of the TCPA.

98.     Further, Plaintiff requests trebling if the Court determines the violations were knowing or willful. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in their favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, certify a class pursuant to Rule 23(b)(3), appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each of Defendants' violations of the TCPA or the FCC's regulations;

C.     That the Court treble the statutory damages to $1,500 per violation if it finds that Defendants violated the TCPA or the FCC's regulations knowingly or willfully;

D.     That the Court enter an injunction prohibiting Defendants from sending advertising material by fax without first demonstrating that prior express invitation or permission has been obtained or that the document to be sent by fax transmission includes an opt-out notice if sent on the basis of an "established business relationship" with the intended recipient; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

Dated: June 28, 2024.

Respectfully submitted,

MILLS    CASHWAY    PHARMACY,    INC., individually and as the representative of a class of similarly-situated persons,

By:     _/s/Blake R. David_____
                One of its attorneys

Blake R. David
Broussard David & Moroux
557 Jefferson St
Lafayette, LA 70501
Telephone: 337-233-2323
Email: Blake@BDM.law

Phillip A. Bock (pro hac vice to be submitted)
David M. Oppenheim (pro hac vice to be submitted)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Email: service@classlawyers.com